IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| ROBERT E. MOSS, | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:14-CV-02180 |
| | § | |
| | § | |
| HARRIS COUNTY; HARRIS COUNTY | § | JURY TRIAL DEMANDED |
| CONSTABLE PRECINCT ONE and | § | |
| ALAN ROSEN, CONSTABLE, | § | |
| HARRIS COUNTY CONSTABLE | § | |
| PRECINCT ONE, | § | |
| Defendants | § | |

**COMPLAINT AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff ROBERT E. MOSS files his Complaint and Jury Demand and complains of

Defendants HARRIS COUNTY; HARRIS COUNTY CONSTABLE PRECINCT ONE; and

ALAN ROSEN, CONSTABLE, HARRIS COUNTY CONSTABLE PRECINCT ONE and

respectfully shows the Court as follows:

**I.  PARTIES AND SERVICE**

1.      Plaintiff Robert E. Moss is a citizen of the United States and resides in the County of

Harris, State of Texas, which is in this judicial district.

2.      Defendant Harris County is a local governmental entity that can be served with summons

and this Complaint by delivery to the Harris County Judge, the Honorable Ed Emmett, at 1001

Preston; Suite 911; Houston, Texas 77002.  Defendant Harris County has employed more than

500 employees since January 1, 2013.

**Complaint and Jury Demand--Page 1**

3.     Defendant Harris County Constable Precinct One (Constable Precinct One) is a local governmental agency created as authorized by the Texas Local Government Code.  Defendant Harris County Constable Precinct One can be served with summons and this Complaint by delivery to Constable Alan Rosen, at 1302 Preston; Third Floor; Houston, Texas 77002. Defendant Harris County Constable Precinct One has employed more than 200 employees since January 1, 2013.

4.     Defendant Alan Rosen is an individual and an elected official of a local governmental agency, Harris County Constable Precinct One, a position he has held since January 1, 2013. Defendant Rosen can be served with summons and this Complaint at 1302 Preston; Third Floor; Houston, Texas 77002.

5.     Defendants in their official capacities are public entities for the purposes of the Americans with Disabilities Act of 1990, as amended (ADA) pursuant to 42 U.S.C. § 12131(1).   Defendants provide programs, benefits or activities acting under the color of state law.

## II.   JURISDICTION AND VENUE

6.     Plaintiff brings this action under the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §§ 12101, *et seq*. (ADA) and under 42 U.S.C. § 1983.

7.     This Court has jurisdiction pursuant to the following statutes:

   a.     28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution and laws of the United States;

   b.     28 U.S.C. § 1343(3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

   c.     28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over state law claims.

**Complaint and Jury Demand--Page 2**

8.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because the events that give rise to this Complaint occurred in this district, and the parties reside in this district.

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Plaintiff Robert E. Moss filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against Defendants within 300 days of his termination of employment.  Plaintiff brought claims under state and federal laws that prohibit discrimination based on an employee's disability, medical leave or request for accommodation or disability benefits; and under laws that prohibit retaliation against employees who engage in the foregoing conduct or who oppose an employer's discriminatory conduct.

10.     Plaintiff brings this lawsuit within 60 days of his June 4, 2014 receipt of a notice of right to sue issued by the United States Department of Justice, Civil Rights Division.   A true and correct copy of the notice is attached as Exhibit 1 and is fully incorporated by reference.   Plaintiff timely brings his claims under state and federal law.

### IV.   FACTS

11.     On January 6, 1997, Plaintiff Robert E. Moss (Deputy Moss) was appointed as a Peace Officer, specifically a Deputy employed by Defendant Harris County Constable Precinct One. Deputy Moss held that position until his termination of employment on April 16, 2013.

12.     At the time of his termination, Deputy Moss was on medical leave due to non-elective surgery, and his treating physician had not approved his return to work.

13.     During his employment as a Peace Officer, Deputy Moss received good performance reviews, and he never received documentation or notice of a performance problem or a disciplinary investigation involving Plaintiff.

14.     Deputy Moss fully complied with Defendants' leave policies that governed his medical

**Complaint and Jury Demand--Page 3**

leave, approved to begin on November 7, 2012 and to continue through an undetermined time. Specifically, on October 31, 2012 Deputy Moss applied for leave under the Harris County Family and Medical Leave policy due to his own serious health condition.

15.     Deputy Moss received a Notice of Eligibility and Rights & Responsibilities under the Harris County Family and Medical Leave (FMLA Notice) policy.   The FMLA Notice was signed by Harris County Constable Precinct One Human Resources representative Kay Finch on October 31, 2012.   A true and correct copy of the FMLA Notice is attached as Exhibit 2 and is fully incorporated by reference.

16.     The FMLA Notice states:

> While on leave you will be required to furnish us with periodic reports of your status and intent to return to work every 2 weeks.   You must make **oral** contact with Sgt. Haggard . . . at 713-755-5200 . . . (emphasis in original).

17.     Deputy Moss was approved for FMLA and additional medical leave.   During Deputy Moss's medical leave, he reported to Sergeant Haggard as required in the FMLA Notice provided to him, until Defendant Constable Alan Rosen demoted Sergeant Haggard on January 1, 2013. Deputy Moss then reported to Sergeant Haggard's replacement, Sergeant Frank Barrett, or to Lieutenant Albert Lui, Sergeant Barrett's superior, for the remainder of Deputy Moss's employment.

18.     At no time did Defendants inform Deputy Moss that his leave had expired, that the terms of his medical leave had changed or that he was required to report his medical or leave status other than as he had reported throughout his medical leave.

19.     On March 25, 2013, Deputy Moss wrote to Constable Alan Rosen and requested that Deputy Moss be allowed to retire, effective May 31, 2013, due in part to his health condition. Deputy Moss made the written request after Defendants verbally confirmed he had sufficient leave

**Complaint and Jury Demand--Page 4**

to permit the requested retirement date.   A true and correct copy of the letter is attached as Exhibit 3 and is fully incorporated by reference.

20.   Constable Alan Rosen did not respond.   Instead, by letter dated April 16, 2013, Constable Rosen notified Deputy Moss that his employment was terminated, effective immediately.   A true and correct copy of Constable Rosen's letter is attached as Exhibit 4 and is fully incorporated by reference.   The letter states:

> Thank you for your years of dedicated service to the Office of Harris County Constable Precinct One.   It is my understanding that you have exhausted all of your FMLA comp time, sick time, vacation time and all other acquired time.   Because you have no more available leave from work, your employment is terminated, effective immediately.

21.   The stated reason for Deputy Moss's termination of employment was false, as Deputy Moss had not exhausted all sick time, vacation time and "all other acquired time," and Deputy Moss had additional "available leave from work," contrary to the statements in the letter.

22.   Deputy Moss's available leave was documented in Notifications of Earnings periodically provided to Plaintiff by Defendants during his employment, which stated his salary, deductions and accrued leave hours for each two-week pay period.   The April 26, 2013 Notification of Earnings stated that Deputy Moss had an "ending balance" of 7.2 leave hours (6.0 vacation hours and 1.2 sick leave hours) for the two-week pay period that ended on April 19, 2013.   A true and correct copy of the April 26, 2013 Notification of Earnings is attached as Exhibit 5 and is fully incorporated by reference.

23.   This information is consistent with Defendants' May 10, 2013 Notification of Earnings, the second such Notification provided to Deputy Moss after his termination.   A true and correct copy of the May 10, 2013 Notification of Earnings is attached as Exhibit 6 and is fully incorporated by reference.   According to the Notification, Deputy Moss was paid "net pay" of

**Complaint and Jury Demand--Page 5**

$141.22 on May 10, 2013 for the two-week pay period that began on April 20, 2013, four days after his termination. The Notification also states that Deputy Moss had an "ending balance" of 1.2 sick leave hours as of the last day of that pay period, which ended on May 3, 2013.

24.　Defendants' own records therefore establish that Deputy Moss remained a paid employee and had remaining accrued sick leave hours after his April 16, 2013 termination of employment.

25.　Defendants denied Deputy Moss his right to take all of his accrued paid leave and up to six months of unpaid leave to which Defendants informed him he was entitled under the Harris County leave policy. Deputy Moss was not provided the opportunity to take unpaid leave, to retire, to be provided with an alternative reasonable accommodation for his disability or to continue to receive Harris County benefits.

26.　After terminating Deputy Moss's employment, Defendant Constable Precinct One then failed to timely complete a Separation of Licensee form (Form F-5) pertaining to Deputy Moss's termination as a Peace Officer licensed as required by the State of Texas. Defendant was required to complete such a form within seven business days of Deputy Moss's termination. *See* TEX. OCC. CODE § 1701.452.

27.　Deputy Moss received a completed Form F-5 from Defendant Constable Precinct One only after he requested one. A true and correct copy of the Form F-5 is attached as Exhibit 7 and is fully incorporated by reference. The Form F-5, which states that Officer Moss's "Date of Separation" was April 16, 2013, was signed by "Agency Administrator or Designee" Kevin Maples, who attested:

> 18.　I, chief administrator or designees, attest that this is a true and accurate explanation of the circumstances under which this person resigned or was terminated.
>
> A copy of this F-5 was provided to the person as required by Occupations Code 1701.452(d), in 7 business days by: . . . Certified mail on 5/3/13.

**Complaint and Jury Demand--Page 6**

28.     The Form F-5 is incorrect on its face, as it is dated May 3, 2013, which is not within seven business days of Deputy Moss's April 16, 2013 termination of employment, contrary to the statements to which Kevin Maples attested in the Form.

29.     The Form F-5 also inexplicably states that Deputy Moss's designation of separation was a "General Discharge."   By so stating, Defendant Constable Precinct One indicated that Deputy Moss had not been Honorably Discharged from his position as a Peace Officer.

30.     The Texas Occupations Code imposed on Defendant Constable Precinct One the duty to timely complete the Form F-5 in accordance with the statute's mandates defining each category of discharge of a licensed Peace Officer.   Defendant Constable Precinct One did not have the discretion to deviate from the statute's mandate in completing the Form F-5.

31.     The Texas Occupations Code and the Form F-5 issued to Deputy Moss define a "General Discharge" as a termination of employment based on a disciplinary investigation or a documented performance problem.   The Form states that such a designation is appropriate if an Officer:

**General Discharge**

(A)     was terminated by, retired or resigned from, or died while in the employ of a law enforcement agency and the separation was related to a disciplinary investigation of conduct that is not included in the definition of dishonorably discharged; or

(B)     was terminated by or retired or resigned from a law enforcement agency and the separation was for a documented performance problem and was not because of a reduction in workforce or an at-will employment decision.

32.     By contrast, the Texas Occupations Code and the Form F-5 issued to Deputy Moss define "Honorably Discharged" as termination of employment if the Officer:

**Honorably Discharged**

Retired, resigned, or separated from employment with or died while employed by a law enforcement agency while in good standing and not because of pending or final

**Complaint and Jury Demand--Page 7**

disciplinary actions or a documented performance problem.

33.     A Peace Officer who is not Honorably Discharged loses certain rights provided to Officers who are Honorably Discharged, including the right to carry a firearm in certain circumstances. The Form F-5 becomes part of the Officer's permanent employment record and impacts the Officer's ability to obtain future employment.

34.     The reason for a Peace Officer's termination is reported to the Texas Commission on Law Enforcement (TCOLE) (previously the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE)), the Texas Agency charged with overseeing the licensing of Peace Officers.

35.     Defendant Constable Precinct One, by checking the "General Discharge" box in the Form F-5, falsely indicated that Deputy Moss had been under disciplinary investigation or had a "documented performance problem" while employed by Defendants as a Peace Officer.

36.     On May 29, 2013, Deputy Moss, through his attorney, wrote to the Honorable Ed Emmett, Harris County Judge, with copies to Defendant Constable Alan Rosen and to TCLEOSE, and informed them of the untimely Form F-5 and the incorrect designation of Deputy Moss's designation of separation as a "General Discharge."    A true and correct copy of the May 29, 2013 letter is attached as Exhibit 8 and is fully incorporated by reference.    Deputy Moss enclosed the termination letter from Constable Alan Rosen, which stated that Deputy Moss had been terminated "because" he had exhausted all available leave on April 16, 2013.

37.     Deputy Moss had not exhausted all available leave on April 16, 2013.    Even if true, however, exhaustion of medical leave is neither a disciplinary investigation nor a documented performance problem of a Peace Officer.    Deputy Moss therefore requested the correction of a clerical error on the Form F-5.    Defendants refused.

**Complaint and Jury Demand--Page 8**

38.     On July 1, 2013, TCLEOSE requested that the State Office of Administrative Hearings (SOAH) place on its docket the matter of Robert E. Moss v. Harris County Constable Precinct One, as a challenge to the F-5 termination report (Administrative Proceeding).

39.     On September 27, 2013, in response to Plaintiff's request for information, Defendants' counsel sent an email stating that Deputy Moss "was not terminated because of any pending investigation."   Rather, according to Defendants, Deputy Moss was terminated under section (B) of General Discharge due to a "documented performance problem."   Defendants cited Constable Alan Rosen's April 16, 2013 termination letter which stated, "Because you have no more available leave from work, your employment is terminated, effective immediately."   According to Defendants, "Unexcused absences from work are performance problems."   A true and correct copy of the September 27, 2013 email is attached as Exhibit 9 and is fully incorporated by reference.   Defendants provided no explanation as to why Deputy Moss's authorized medical leave was an "unexcused absence" and provided no documentation of a performance problem.

40.     During the pendency of the Administrative Proceeding, Deputy Moss served discovery on Defendant Constable Precinct One seeking evidence to support Defendants' allegations that Deputy Moss had unexcused absences from work.   In response, Defendant Constable Precinct One produced Harris County computer payroll records (Notifications of Earnings) that purported to show that Deputy Moss had no remaining medical leave or other leave benefits as of April 16, 2013.

41.     Those payroll records differed significantly from the Notifications of Earnings provided to Deputy Moss during his leave.

42.     As but one example of such significant differences, the March 15, 2013 Notification of Earnings provided to Deputy Moss on March 15, 2013 showed that Deputy Moss had an "ending

**Complaint and Jury Demand--Page 9**

balance" of 163.4 hours of accrued comp, vacation, holiday and sick leave as of the last day of the two-week pay period ending on March 8, 2013. A true and correct copy of the March 15, 2013 Notification of Earnings is attached as Exhibit 10 and is fully incorporated by reference. Of those accrued leave hours, 104 were protected FMLA hours. The Notification states:

|                    | Beginning Balance | Earned | Used | Ending Balance |
|--------------------|-------------------|--------|------|----------------|
| Comp Time Hours:   | 141.0             |        | 80.0 | 61.0           |
| Vacation Hours:    | 82.0              | 6.0    |      | 88.0           |
| Floating Holiday:  | 8.0               |        |      | 8.0            |
| FMLA               | 184.0             |        | 80.0 | 104.0          |
| Sick Leave Hours:  | 3.4               | 3.0    |      | 6.4            |

43.    By contrast, Defendant Constable Precinct One produced a March 15, 2013 Notification of Earnings after Plaintiff's termination of employment which showed that, for the same pay period ending on March 8, 2013, Deputy Moss had an "ending balance" of accrued leave hours totaling only 1.2 hours of sick leave, with no protected FMLA leave. A true and correct copy of the altered March 15, 2013 Notification of Earnings is attached as Exhibit 11 and is fully incorporated by reference. The altered Notification states:

|                    | Beginning Balance | Earned | Used | Ending Balance |
|--------------------|-------------------|--------|------|----------------|
| Comp Time Hours:   | 80.0              |        | 80.0 |                |
| Vacation Hours:    | (6.0)             | 6.0    |      |                |
| Floating Holiday:  |                   |        |      |                |
| FMLA               | 80.0              |        | 80.0 |                |
| Sick Leave Hours:  | (1.8)             | 3.0    |      | 1.2            |

44.    Notably, the altered version of the March 15, 2013 Notification of Earnings also significantly over-states the "year to date" salary paid to Deputy Moss. The correct Notification (Exhibit 10) as provided to Deputy Moss in March 2013 states that his "year to date" earnings totaled $15,212.98, with corresponding deductions, including for FICA, Medicare and federal income tax, totaling $6,879.77 for net pay of $8,333.21. The altered document (Exhibit 11)

**Complaint and Jury Demand--Page 10**

shows "year to date" earnings totaling $21,470.15, with deductions totaling $9,101.65, for net pay of $12,368.50. The altered amounts do not correspond with amounts deposited by Defendants into Deputy Moss's bank account during the period January through March 15, 2013.

45.    After Deputy Moss's termination, Defendant Constable Precinct One produced additional payroll and time records pertaining to Deputy Moss that also differed significantly from the records that Defendants provided to Deputy Moss during his medical leave.

46.    Deputy Moss has never been notified of any errors in his Notification of Earnings or time records. Deputy Moss first saw the altered payroll and time records when they were produced by Defendant Constable Precinct One after he complained of wrongful termination.

47.    During the pendency of the Administrative Proceeding, Plaintiff Deputy Moss filed a charge of discrimination with the EEOC, which was also filed with the Texas Workforce Commission pursuant to those agencies' work share agreement. The charge was based in part on Defendants' conduct and allegations made in the Administrative Proceeding. A true and correct copy of the EEOC charge is attached as Exhibit 12 and is fully incorporated by reference

48.    On October 14, 2013, Deputy Moss again provided Defendants with written notice of his claims. A true and correct copy of the October 14, 2013 notice letter is attached as Exhibit 13 and is fully incorporated by reference. At no time did Defendants offer Deputy Moss reinstatement of his employment or benefits, the opportunity to retire or a reasonable accommodation for his disability, including the opportunity to complete his leave under Defendants' leave policies.

49.    According to information obtained from licensed Peace Officers employed by Defendant Constable Precinct One, Constable Alan Rosen stated to them that Deputy Moss was terminated because of performance problems. That statement was false, for the reasons set forth above.

50.    Defendants' policy, custom and procedure of terminating a Peace Officer because he

**Complaint and Jury Demand--Page 11**

purportedly exhausted his medical leave, and then designating such a termination as a "documented performance problem," violates state and federal laws that prohibit discrimination and retaliation based on an employee's disability, his request for accommodation for the disability, his exercise of his right to medical leave and benefits, and violates the employee's constitutionally protected property, contract and due process rights.

## V.  CLAIMS

### COUNT ONE
### VIOLATIONS OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT

51.    Plaintiff Deputy Moss repeats and incorporates each of the foregoing facts and allegations set forth in this Complaint as if fully set forth in this paragraph.

52.    Plaintiff Deputy Moss is a qualified individual with a disability under the ADA, as Plaintiff suffers from job-related back injuries, which required him to take medical leave.  Defendants perceived Plaintiff to be a qualified individual with a disability as defined under the ADA, and authorized Plaintiff's leave to accommodate his disability.

53.    Defendants had knowledge that Plaintiff was required to take medical leave for his disability.  Defendants terminated Plaintiff's employment because he took leave to accommodate his disability, although the leave was authorized by Defendants' leave policies and approved by Defendant Constable Precinct One.  At no time was Plaintiff informed that his right to medical leave had lapsed.  Defendants then falsely stated that Plaintiff was terminated for "unexcused absences" although Defendants continued to pay Plaintiff for accrued leave time to which he was entitled after his April 16, 2013 termination of employment.

54.    Plaintiff was also entitled to take up to an additional six months of unpaid leave under Defendants' leave policies.

**Complaint and Jury Demand--Page 12**

55. After Plaintiff challenged Defendants' termination of his employment, Defendants produced payroll and time records that differed significantly from the payroll records and amounts paid to Plaintiff while he was on medical leave.

56. Defendants then for the first time asserted that Deputy Moss had been terminated for a "documented performance problem" because he remained absent due to authorized medical leave, which Defendants characterized as unexcused absences from work. Defendants' conduct deprived Deputy Moss of medical and leave benefits and the right to retire despite Plaintiff's many years of honorable service as a Peace Officer. Defendants, acting through Defendant Constable Alan Rosen, then falsely stated to Defendants' employees that Deputy Moss had been terminated because of performance problems.

57. Defendants terminated Plaintiff for having a disability, for taking leave as a reasonable accommodation for his disability and for requesting disability leave benefits. Defendants did not offer Plaintiff an alternative reasonable accommodation for his disability.

58. Defendants' actions are willful, knowing and intentional violations of Title I of the ADA.

59. Deputy Moss seeks compensation for the damages he has suffered, and continues to suffer, as a result of Defendants' conduct, including without limitation lost wages and benefits; loss of future earnings and earning potential and capacity; loss of seniority; medical and other expenses in the minimum amount of $30,000.00 to date due to lost benefits; loss of enjoyment of life; mental anguish; emotional pain and suffering and distress; costs, including costs of attempting to find employment; damages to Plaintiff's good reputation and career; costs of court; reasonable attorney's fees, which are ongoing; costs of experts; pre- and post-judgment interest; and any other appropriate relief necessary to make Plaintiff whole.

**Complaint and Jury Demand--Page 13**

## COUNT TWO
## VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

60.     Plaintiff Deputy Moss repeats and incorporates each of the foregoing facts and allegations set forth in this Complaint as if fully set forth in this paragraph.

61.     Defendants' conduct described in Count One constitutes violations of Title II of the ADA.

62.     Plaintiff has been denied and excluded from the benefits of Plaintiff's employment and Defendants' employee benefit plans.

63.     Defendants' termination of Plaintiff's employment and denial of Plaintiff's leave and benefit rights violated the ADA and discriminated against Plaintiff.

64.     As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained and continues to sustain injuries and damages as set forth in Count One.

## COUNT THREE
## VIOLATIONS OF TITLE V OF THE AMERICANS WITH DISABILITIES ACT

65.     Plaintiff Deputy Moss repeats and incorporates each of the foregoing facts and allegations set forth in this Complaint as if fully set forth in this paragraph.

66.     After Deputy Moss's termination, he complained to Defendants of their wrongful denial of his leave and benefit rights and wrongful termination of his employment.  After Plaintiff complained and TECLEOSE initiated the Administrative Proceeding, Defendants for the first time provided to Plaintiff payroll records with leave and pay calculations that differed significantly from the records initially provided, and the amounts paid, to Plaintiff.

67.     Defendants by engaging in the foregoing conduct deprived Plaintiff of benefits and accurate income reporting as retaliation against Plaintiff for engaging in protected conduct under the ADA, and for complaining of and opposing Defendants' discriminatory conduct.

68.     As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has sustained

**Complaint and Jury Demand--Page 14**

and continues to sustain injuries and damages as stated in Count One.

## COUNT FOUR
## VIOLATIONS OF CHAPTER 21 OF THE TEXAS LABOR CODE

69.     Plaintiff Deputy Moss repeats and incorporates each of the foregoing facts and allegations set forth in this Complaint as if fully set forth in this paragraph.

70.     Defendants' conduct set forth in Counts One, Two and Three also constitute violations of the anti-discrimination and anti-retaliation provisions of Chapter 21 of the Texas Labor Code (TLC).

71.     As a direct and proximate result of Defendants' unlawful discrimination and retaliation, Plaintiff has sustained and continues to sustain injuries and damages as stated in Count One.

## COUNT FIVE
## CLAIMS UNDER 42 U.S.C. SECTION 1983

72.     Plaintiff Deputy Moss repeats and incorporates each of the foregoing facts and allegations set forth in this Complaint as if fully set forth in this paragraph.

73.     Defendants, acting under the color of state law, deprived Plaintiff of his federal constitutional rights.  Specifically, Defendants violated, impaired and interfered with Plaintiff's property interests and contractual and statutory rights to the benefits of employment, including the rights to retire and to employee benefits under Plaintiff's employment contract and under Defendants' policies.  Defendants by their conduct violated Plaintiff's due process rights and rights under the Contract Clause as set forth in the United States Constitution.

74.     Plaintiff seeks compensation resulting from Defendants' conduct as permitted under 42 U.S.C. section 1983.  Plaintiff has sustained and continues to sustain injuries and damages, including loss of leave and benefit rights, medical costs to date in the minimum amount of $30,000.00, mental anguish and loss of reputation.

**Complaint and Jury Demand--Page 15**

75.     Defendants' conduct was willful, knowing, intentional, malicious and undertaken with deliberate indifference to and reckless disregard for Plaintiff's clearly protected and well-established rights.   Plaintiff seeks recovery for his attorney's fees and costs of court.

## COUNT SIX
## BREACH OF CONTRACT

76.     Plaintiff Deputy Moss repeats and incorporates each of the foregoing facts and allegations set forth in this Complaint as if fully set forth in this paragraph.

77.     On or about January 6, 1997, Plaintiff entered into an employment agreement with Defendants or their predecessors, under the terms of which Defendants agreed to pay Plaintiff Deputy Moss an annual salary and employee benefits, including medical, leave and disability benefits under Harris County benefit plans.

78.     Defendants also agreed and were required to provide Plaintiff with certain rights under the terms of their policies and procedures, including the right to apply for and take medical leave as authorized under Defendants' leave policies.

79.     Plaintiff fully performed his obligations and provided services in accordance with the terms of his employment contract.   Defendants terminated Plaintiff's employment rather than allowing him to take continued leave to which he was entitled under Defendants' leave policies.

80.     Defendants breached their agreements with Plaintiff by wrongfully terminating Plaintiff's employment and denying Plaintiff the right to retire; wrongfully altering Plaintiff's employee benefits and employment records and wrongfully designating Plaintiff's separation of employment as a termination for a documented performance problem.

81.     Plaintiff seeks recovery for all actual, general, consequential and special damages he has incurred and will incur as a result of Defendants' wrongful breaches of Plaintiff's employment and

**Complaint and Jury Demand--Page 16**

benefit agreements.    Plaintiff seeks compensation for the full amount of the benefits that Plaintiff would have received had Defendants not terminated his employment, including medical, health, retiree and leave benefits, and the right to retire.    Plaintiff to date has incurred medical expenses in the minimum amount of $30,000.00 as a result of Defendants' breaches of contract.

82.    Plaintiff also seeks compensation for attorney's fees and pre- and post-judgment interest.

## COUNT SEVEN
## REQUEST FOR DECLARATORY RELIEF

83.    Plaintiff Deputy Moss repeats and incorporates each of the foregoing facts and allegations set forth in this Complaint as if fully set forth in this paragraph.

84.    An actual controversy has arisen and now exists between Deputy Moss and Defendants concerning Plaintiff's property, contract and civil rights that are protected under the United States Constitution and under federal and state law.

85.    Plaintiff seeks a judicial declaration of his rights against Defendants to be free of prohibited discrimination, retaliation and deprivation of his property, contract and civil rights.

86.    To prevent further violation of Plaintiff's federal rights by Defendants, it is necessary and appropriate that a declaratory judgment issue, pursuant to the remedies provided under the ADA and the TLC, and as further provided under 28 U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure.    Specifically, Plaintiff seeks a Court declaration that Defendants' policy, custom and procedure of categorizing employees terminated because they exhausted their paid leave taken to accommodate a disability as a termination for a "documented performance problem" violates the ADA and the TLC; and that Defendants' implementation of this policy, custom and procedure deprived Plaintiff of his federally protected rights to be free of disability-based discrimination and retaliation.

**Complaint and Jury Demand--Page 17**

87.     Plaintiff Deputy Moss also seeks compensation for attorney's fees incurred in obtaining the declaration he seeks.

## COUNT EIGHT
## REQUEST FOR INJUNCTIVE RELIEF

88.     Plaintiff Deputy Moss repeats and incorporates each of the foregoing facts and allegations set forth in this Complaint as if fully set forth in this paragraph.

89.     Plaintiff also requests that this Court issue a permanent injunction pursuant to the remedies provided under the ADA and the TLC, and as further provided under 28 U.S.C. section 2202 and Rule 65 of the Federal Rules of Civil Procedure.  Plaintiff requests that the Court order Defendants to correct Plaintiff Deputy Moss's payroll and time records so that the records accurately state the hours worked by Deputy Moss, and his accrued earnings, deductions and benefits.

90.     Plaintiff also seeks an injunction prohibiting Defendants from otherwise altering or providing false information in records that pertain to Plaintiff's employment, termination of employment, earnings, deductions and benefits.

91.     Plaintiff is suffering irreparable harm from Defendants' continued enforcement of their discriminatory and retaliatory conduct, policies, customs and procedures, which violate the ADA and the TLC and deprive Plaintiff of his federally and state protected property, contract and civil rights.

92.     Specifically, Plaintiff has been deprived of leave, health and retirement rights and benefits. Also, earning amounts paid to Plaintiff during his leave do not match the amounts stated in the payroll records produced by Defendants after Plaintiff's employment was terminated.  On information and belief, the amounts do not match earnings and withholding information reported

**Complaint and Jury Demand--Page 18**

by Defendants to federal and state governmental agencies.

93.    Plaintiff Deputy Moss also seeks compensation for attorney's fees incurred in obtaining the injunction he seeks.

## VI.    JURY TRIAL DEMAND

94.    Plaintiff requests a trial by jury.

## VII.    NOTICE OF SUIT

95.    Plaintiff is providing notice of this lawsuit under section 89.0041 of the Texas Local Government Code.

## VIII.    REQUEST FOR RELIEF

96.    Plaintiff Robert E. Moss respectfully requests that this Court enter judgment in his favor against Defendants Harris County; Harris County Constable Precinct One; and Alan Rosen, Constable, Harris County Constable Precinct One, jointly and severally, and award the following relief:

(1)    award Plaintiff Deputy Moss damages as pled in this Complaint and as allowed by law to compensate him for the injuries caused by Defendants, including actual, general, consequential, special and all other damages to the full extent allowed by law; and compensation for attorney's fees and costs of court, together with pre- and post-judgment interest on all amounts awarded him;

(2)    enter judgment declaring that Defendants' policy, custom and procedure of designating a Peace Officer's termination of employment for taking authorized leave as accommodation for a disability as a termination for a "documented performance problem" violates the Americans with Disabilities Act and Chapter 21 of the Texas Labor Code and deprived Plaintiff of his federal and state rights to be free of disability-based discrimination and retaliation;

**Complaint and Jury Demand--Page 19**

(3)     issue a permanent injunction prohibiting Defendants from altering or providing false information in government payroll records pertaining to Plaintiff's employment, termination of employment, earnings, deductions, tax and benefit records; and ordering Defendants to correct Plaintiff's payroll records and report the correct earnings, deductions and benefits paid, withheld or owed to Plaintiff under state and federal law; and

(4)     award Plaintiff such other relief as this Court deems just and proper.

Respectfully submitted,

GREER, SCOTT & SHROPSHIRE, L.L.P.

  /s/ Lawrence B. Greer
LAWRENCE B. GREER
Texas Bar No. 08417350
Attorney in Charge
6363 Woodway Drive; Suite 810
Houston, Texas 77057
713.223.0175
713.223.0174 (facsimile)
lgreer@greerscottlaw.com

KAREN G. SHROPSHIRE
Texas Bar No. 08417150
Admission Pro Hac Vice Requested
300 Preston Commons West
8117 Preston Road
Dallas, Texas     75225
214.706.9250
214.706.9251 (facsimile)
kshropshire@greerscottlaw.com

**ATTORNEYS FOR PLAINTIFF
ROBERT E. MOSS**

**Complaint and Jury Demand--Page 20**